Good morning, Your Honors, and may it please the Court, Carla Aikens on behalf of Plaintiff Darren Farmer. I would like to reserve three minutes for rebuttal. Thank you. I think the overarching issue is with the overuse of Rule 56 to resolve factual disputes. I think the important part to note at the outset is that the District Court accepted the exhaustion argument. So that means that Mr. Farmer exhausted on race, retaliation, and disability in terms of what he went to the EEOC on. Now in his complaint, I recognize it's not in, it may not be completely clear in the briefing, but the District Court's opinion did rely upon the complaint to some extent. So I do want to direct the Court to that. Within the complaint, it's clear that if there was exhaustion on these things, and you don't have to go back to the EEOC every single time that you experience an adverse action, but the basis of what you're complaining about does come up during the EEOC process, and that has to be included at this stage of the proceedings. And so when it comes to whether or not Mr. Farmer was discriminated against on the basis of disability, retaliation, or race, then his termination and all the things that happened between when he first went and when the EEOC issued his charge have to be considered, and the District Court did that. However, when it came down to analyzing the factors, and they started talking about disability and only relating to the diabetes, which was the initial reason that he went. However, per the complaint, in responding to the position statement from the defendant, he indicated all of these things that happened in between, and that those things were investigated at the EEOC stage because the Court did not find that they weren't exhausted as to the termination and everything that happened before. So we have to take that into account. There's no intervening situation that happens between the time when Mr. Farmer goes out in October. The defendant doesn't dispute that he came back into work because they have the email from their human resources trying to figure out where he's at. I guess that's what they said. But there's nothing showing that there was any contemporaneous documentation. In fact, what they have listed is that there's a policy issue on October 6th per the email where they list out things that were related to him. And then the supervisor says Mr. Farmer was there on October 6th, and that he had some other trainings and things to do. All right. At that point, if whatever they were saying was really a real issue, then they could have presented it to him at that point, but they didn't. So now we come back. He's trying to return to work. Acknowledge that there were some issues related to they were sending things to email that he didn't have access to. His phone had been stolen. That's for his deposition transcript. And just for that, let's say, 134 of his deposition, he didn't get any calls. So they don't make an issue of that. There's no discussion about these October issues or anything of that nature. We're just going to bring you back. All right. Then he comes back. He tries to come back in February. Badges in or attempts to, can't get in. That's suggestive of something a little bit more different than we were just trying to get you to return to work. Why was your badge cut off? Okay. So he goes to the meeting, and now he's on a final related to things that happened in October. Defendant makes no attempt to explain why did it wait from October to February to take whatever actions it was trying to take if they had the opportunity to say something to him prior. Also, if you're really, as they're trying to make it seem, did all of this to try to help him to return to work, then why would you immediately, upon him coming back in the building, say, well, here you go. You're on a final. Basically, this is your last chance, and you're out of here. And he had already, I mean, they're taking apart this one incident as if none of the other things had happened, and that's what the totality of the circumstances is. That's what Reeves versus Sanderson, that's what Anderson versus Liberty Lobby, Tolan versus Cotton, that's what they're talking about. You don't take the facts in a light most favorable to the defendant, which is what the district court did. I mean, most of the facts were taken from verbatim from what the defendant indicated. Understood, but Mr. Farmer is telling a completely different story, which is, I was already having these issues with being promoted. I get written up specifically by Mr. Roberts on the basis of my disability. Sure, they take it out later. They say, okay, no harm, no foul. Well, he's already gone to the EEOC about that. And then all of a sudden, you start to have all of these issues. There's no disconnect between any of these actions happening, and you come in, return to work, and then all of a sudden, now you're on a final about something that happened in October. What is the strongest claim? What is the claim you want us to focus on most, and the error that you think that the district court made in granting summary judgment for the defendants here? Retaliation. Everyone is in the EEOC process while all these things are happening. So while they say that there are these issues with him coming back, then they acknowledge in their own timeline and the one from the district court that they were basically having him have to go through these return to work. He was having to do all this stuff just to come back in. He was having some back issues, and he's come forward. So now they're in the entire EEOC process. While all this is happening, the EEOC process is also going on. Defendants are clearly aware of it because they're responding. He comes in the door immediately. His badge is not working. What reason would he be? If he wasn't terminated, and now you're saying he was terminated, we decided to terminate him later because there's another key point to this is, per the complaint, Mr. Farmer, he walks in. They have this discussion. He says, he did tell them, you're lying. Basically, you're making this up. They've already had these back and forth and all that. Then he's upset. What is the protected activity we're talking about with what you're discussing now? Going to the EEOC, the defendant acknowledges it. The district court acknowledges it. There's another complaint in October against Mr. Roberts who he's already complained about. They said that they did this thorough investigation. He then gets written up again right around the same time. I'm sorry. That happens, and then they say they're writing him up in February about something that happened before he went even though he had just complained. HR comes to this conclusion, of course, that he was only complaining because he knew he was about to be disciplined. He hadn't even spoken to him about it. He didn't know anything about the later discipline until he comes in in February. They couldn't have concluded that investigation at some point in the fall, didn't tell him about it. They never investigate. That's the biggest issue is that the sham investigation is, it's already been decided by the time he came up. They asked, well, can we talk about this? It wasn't like he just came in zero to 10 upset. He's upset because they said, well, it's going in there anyway, no matter what you say. Then at the meeting, no termination happens. They don't tell him he's being terminated. Then the next day, or a couple days later, I think, in terms of, I don't want to misstate that. A few days later, now he's been terminated. Now the reason is because of what you said, and it had nothing to do with all these other things. That, to me, is pretext. The district court focuses on it as this honestly held belief, which I primarily do practice within the Sixth Circuit. We have the same doctrine. I take great issue with, because I think it does not comport with anything that's in Toland v. Cotton and Reed v. Sanderson, Anderson v. Liberty Lobby. You cannot take anyone's belief as summary judgment. It's just not proper. I know that the Eighth Circuit has, in some ways, accepted the same doctrine, but I think it violates Rule 56 because you are now saying they actually believe that and that is the real reason, but they manufactured the reason. It's not about whether or not his evidence is good enough. It's whether, did he submit sufficient evidence? That's my issue with respect to the discard, if you will, of the pretext, because it's not that simple. There's a ton of evidence here. Whether a jury decides to believe it is not for the district court to decide. It's for the jury to decide. We can come back to some of those claims if you'd like, but I want to make sure we have enough time to talk about the jurisdictional issue and the motion to dismiss the appeal as untimely. I want to make sure you have an opportunity to present your position on that. Thank you, Honor. I think that our briefing was fairly straightforward with respect to that. There's already precedent from the Supreme Court, from this circuit, with respect to if you filed something with the intention of it being this, we don't hold you to having those exact words in the document. What about, we've got the DuBose case, which I think you rely on, but then, of course, the defendants rely on our Nordgren case. Could there be a way to make those work together if we would say we'd have to look at the actual substance of the motion? Was it actually substantively a 59E motion? Are you asking me if that's what we intended? Well, I'm wondering, I'm trying to put together the two cases. You cite DuBose, they cite Nordgren, and they could be conflicting. I'm trying to figure out a way to reconcile the two, and I'm wondering if you have thoughts on that. And that's the citation to the Gellin case out of the Fourth Circuit, which was that the substance of the motion, rather, it's form that controls, and other circuits have found the same. So I think with respect to the judge herself did not find it to be untimely and did actually decided it on the merits, treated it like a Rule 59 motion, saying that there wasn't any basis. The same standards that apply under Rule 59, there's not a lot of them within the text itself. But with respect to the local rule, at least some guidance as to how do you decide that, and she made that determination that basically I was right and this was fine. And is there some argument with respect to Rule 83 of that rule itself being in conflict with Rule 59 because we have to go through another step before we can even file a reconsideration? Or if I had said that this was a motion to set aside, many times the courts treat things differently based upon the substance. Same with, you have a 12B motion that might get converted to Rule 56 if you have things that are outside of the pleadings and things of that nature. So I mean, I've seen the substance usually controls and I think that that's, the circuit has already said that that's the preference. And again, if the district court had rejected it, I think they may have a stronger argument for that, but she didn't and she went ahead and analyzed it and that's what we were trying to do. Within it puts the arguments that we would have made, obviously in a much abbreviated version than I probably would have done had I had a full motion for reconsideration to file. But the substance I believe is to be the same and I think that the case that we cited is controlling in that circumstance. And I have about four minutes left. Is there any other questions that you have for me before I, otherwise I will just reserve the rest of the time for rebuttal? No? Okay. Thank you. I see none. Thank you. Thank you. May it please the court. The first topic that I would like to address is film text pending motion to dismiss, which was just discussed with opposing counsel here. Dismissal of Mr. Farmer's appeal is appropriate because he did not timely file a notice of appeal. There's no dispute that the district court issued final judgment on September 20th, 2024 and Mr. Farmer filed a notice of appeal on November 19th, 2024. This was 60 days later. Mr. Farmer now argues that the letter filed by counsel requesting leave of court to file a motion for reconsideration operated to extend the appeals period under Rule 59E. As this court touched upon, Mr. Farmer did not file a motion for relief under Rule 59E either in form or in substance. So either way we look at it, the appeals period began to run on September 20th, 2024. What do we do about DuBose? So, I think that DuBose says when a motion is filed where the form is a proper Rule 59E motion, that's what is being argued, that's what was decided, then the court can treat it accordingly. However, this case is more akin to Norgren versus Hennepin County in that case the appellant actually filed a motion for relief under 59E, but the district court found that based upon the substance of the motion, it was not a proper motion for relief under Rule 59E as the party did not identify any manifest errors of law or fact, nor did they cite to any newly discovered evidence that would entitle them to relief. And therefore, the district court properly treated it as a motion for reconsideration, which is different from a motion under Rule 59E. Yeah, but Norgren didn't even cite, I don't think it cited DuBose. Right. Yeah, and you know, the first case in line is the one that dictates what we do. One thing I would note about DuBose, which was not touched upon by opposing counsel here, is that there is a footnote in that order saying, we do not believe that the District of Minnesota's local rule requiring litigants to file a letter requesting permission prior to bringing a motion for reconsideration applies to motions under Rule 59E. Litigants have a right under the rules of civil procedure to file motions under this rule. A district court cannot adopt local rules that interferes with that right. So even if we look at DuBose, and that was what was governing how Mr. Farmer and his counsel decided to seek post-judgment relief, if we look at that case, it's clear that Mr. Farmer was entitled to file that motion. There was no requirement to go through the motion for reconsideration process. That was an alternative avenue that they decided to pursue. But it did preclude them from filing a notice of appeal if they didn't file it within the 30 days of the final judgment. That's not what happened in DuBose, though. Correct. In that case, they did find that the letter requesting permission was a Rule 59E motion. It's hard. I mean, it's hard. And here, I don't think it would make sense to make that finding just based on what was actually in that letter itself. Okay. So moving on to the substance of the appeal itself, clearly there's a pretty lengthy factual background, which I think has been set forth pretty thoroughly and in detail in the briefing. I want to highlight a couple key issues that seem to be repeated throughout Mr. Farmer's briefing and discussed today by opposing counsel. The first issue I want to note is just that Mr. Farmer did not plead a race discrimination claim. There's no cause of action in his complaint for disparate treatment based on race that was never part of his complaint. That's not part of the case today. I also wanted to note that the same is true with respect to the failure to accommodate claims. Mr. Farmer dismissed those at summary judgment, so they're no longer an issue. Mr. Farmer does make some arguments throughout the briefing suggesting that various film tech actors were motivated to make certain decisions or treated employees differently based upon race, while film tech disputes that that's actually in the record. In any event, it doesn't advance any of Mr. Farmer's causes of action that are pled and currently pending before the court. I'd like to highlight this continued assertion that Mr. Farmer was subjected to an unusual return to work process or that Ms. Caluso was somehow uncharacteristically involved in this process and that somehow gives rise to an inference that she held some sort of discriminatory or retaliatory animus. What the record actually shows is that film tech's health services department was following film tech's established policy for returning employees to work following an injury. That policy, which is in the record, sets forth the process for arranging for and directing employees to conduct a separate fitness for duty exam with Minnesota Occupational Health. That is what happened here. Mr. Farmer was working at film tech. He went out for a little bit in August of 2020, returned, was working. That's when these issues with Mr. Roberts arose in which he noticed issues with Mr. Farmer's performance. He emailed Ms. Caluso in HR discussing these verbal and written warnings that were eventually issued to him in February, but that's when those issues arose while he was working. Mr. Farmer eventually went out due to pain he was experiencing in his back in October 2020. I believe the date was October 13th or October 12th. Health services was maintaining consistent communication with him throughout this time. They were working with him, reminding him to provide doctor's notes in accordance with their policies for taking time off work. He responded to some of those. He didn't respond to others. In early November, they instructed him to attend a fitness for duty examination at Minnesota Occupational Health. Where things became muddy is that Mr. Farmer missed his first appointment, so they had to reschedule it for a later date. Mr. Farmer attended that appointment, but he left early before the work simulation was performed, so the providers at MOH weren't able to complete the workability report, which is what the health services department was looking for. MOH then communicated that they could complete the report by getting records from Mr. Farmer's primary care physician. Are all these facts in support of the, to counter the, I guess the assertion, I think, by Mr. Farmer that other folks were treated differently, that there was deposition testimony that other employees said, well, I didn't, I've never had HR involved in these kind of situations before? Yeah, exactly. And it also shows that HR wasn't involved. This wasn't through HR. This was through the health services department, which is separate from HR. So I don't know why that's an assertion that's been raised so much, because the record doesn't show that HR had any involvement at this point. And to your point about other employees being treated differently, if we look at the testimony of another FilmTech employee, Osiris Renz, he testified that he also had to do this exam before he returned from his medical leave. It wasn't anything unusual. The unusual part was that Mr. Farmer missed his appointment, then he left early, and then they needed these records, and no one was facilitating this transfer. Mr. Farmer certainly wasn't. His potentially health services decided to just set a new appointment so that they could complete it in its totality and return him to work. The notes from health services at that point specifically say, we are looking to get Darren back to work ASAP, trying to figure out how to get these records. So that appointment happened on December 21st, 2020. The record shows that Mr. Farmer did not contact FilmTech. He did not contact health services. He didn't report to work. He didn't make contact with anyone until December 28th, 2020. So after Mr. Farmer attended that appointment, he was cleared to return to work, the health services department nurses reached out to him several times to get him back to work because he was cleared to work. There was nothing stopping that from happening. They reached out to him. They couldn't get a hold of him. After a lot of efforts to get a hold of him in the next two days following that appointment, they advised Human Resources to say, look, he's cleared. We don't know how to get a hold of him. The ball is in your court now to handle how we want to do the return to work. It was not until that point that Ms. Caluza in Human Resources became involved because at that point it was a disciplinary issue because Mr. Farmer just didn't make any contact with FilmTech despite being released to work. Another point that Mr. Farmer raises and which was just discussed on oral agreement today that he was written up for his diabetes in April of 2020. That is not what the record shows. What the record shows is that Maurice Roberts, Mr. Farmer's direct supervisor, gave Mr. Farmer a documented coaching which said that you left the floor without notifying a supervisor or a lead technician. A documented coaching is just that. It's documentation that a coaching occurred. Why wouldn't that be an adverse action? Because a documented coaching under FilmTech's established balance of consequences policy which is their progressive discipline policy specifically says a documented coaching is not disciplinary action. It's not considered in pay exercises. It's not considered in performance reviews. It's simply we're noting that this conversation occurred. Would there be some cumulative effect? In other words, you get three or four of those and then you get some kind of adverse action. In other words, it's one step on the way toward an action that would qualify? There's nothing in the policy suggesting that. Of course, if an employee is repeatedly having a performance issue and then it rises to a state where discipline is issued, I think the point of this is to say we're talking about employers. We always urge employers to document conversations they have with employees. Providing feedback about an expectation certainly is not an adverse employment action. In any event, Mr. Farmer complained to Ms. Caluza that he didn't think that the contents of this document, the coaching were accurate and Ms. Caluza removed it from his file. To the extent Mr. Farmer bases his claim on this, this was a documented coaching not considered disciplinary action that remained in his file for a period of approximately five months. Can you help me understand how this hotline works? The briefing refers to these anonymous calls to hotlines, but then it's retaliation based on that. If it's anonymous, I must be misunderstanding what anonymous means. Does it mean I'm identifying myself but you can't tell anyone else or is it I am not identifying myself and here's what I am reporting? No, it was anonymous. The human resources, so I don't know if this is in the record, but for purposes of understanding the system, they have a separate compliance department that fields these anonymous ethics point complaints and then they assign it to whosoever appropriate to investigate. Here they assigned it to human resources on site at Film Tech to investigate. This was thoroughly investigated. The investigation notes are in the record. A lot of employees were interviewed, but there is nothing suggesting that Ms. Caluza... When is Mr. Farmer identified as, if ever, as the... Well, obviously he's identified himself here through this and you have too, I think, identified him. When does that happen? In July, Mr. Farmer met with Ms. Caluza and he told her that he was the one who submitted them. So it's not part of the process that they go try to find out who it is. It came out later. Yeah, no, and I think that's why it took kind of a while because they couldn't just go to the source and ask, who are you talking about? Like, what are we talking about here? And so he had a couple of different calls, but ultimately they completed an investigation which resulted into employees being terminated. I know my time is running out a bit, but one thing I do want to focus on is that Mr. Farmer makes a lot of references to different protected activity and different purportedly adverse employment actions, but what the record completely lacks and what Mr. Farmer does not cite is any sort of indication of a discriminatory or retaliatory animus. The verbal warning and the written warning that Mr. Roberts issued Mr. Farmer during the return to work meeting on February 1st because Mr. Farmer wasn't at work in between when those documents were created and when they were issued to him. There is no evidence that he was aware that Mr. Farmer had made those complaints. There's nothing suggesting that he knew about Mr. Farmer's charge with the EEOC. There is nothing in the record suggesting that him or anybody else held any sort of retaliatory animus and Mr. Farmer has to do more than simply say, I engage in protected activity and I was fired in order to create a fact issue that warrants a jury trial. This court has repeatedly held that to create a fact issue to survive summary judgment on pretext, the plaintiff has to do more than simply state that there's a temporal connection or that both of these events happen. They have to point to some evidence in the record that would enable a reasonable fact finder to conclude that this protected activity or the protected characteristic is what motivated the decision at issue and that's what the record is lacking. I see no additional questions so thank you for your argument. Thank you. Zakins, your rebuttal. Just briefly addressing the motion to dismiss. The court obviously wanted it brought together. We've come through all this briefing related to the substance. I don't want to repeat it again. The intent that we had in filing the letter was to follow the rules with respect to how we could have the judge reconsider her opinion. Everything cannot be gotten rid of on technicalities and things that were not intended. The district court did not make a determination that it was untimely. I think that that should be taken into consideration and that the merits of this claim should be decided. Defense states that we did not plead a racial discrimination claim. That's not technically true because we're hostile work environment claim is on the basis of race. With respect to the totality of the circumstances and why the Supreme Court emphasizes this because Mr. Farmer was there for since 2009, 10 and 11 in terms of temporary worker he gets hired in by this subsidiary of DuPont and he doesn't have any issues. If he did, would have brought them up. Then all of a sudden the reason why, to your Honor's point, why is that not an adverse action when they're writing him up. The reason for the write-up had to do with the fact of him going to the nurse. That's the testimony that we cite. That was pretty clearly directly related to his disability. That one of the disabilities that he had. With respect to his performance, he hadn't had any other issues, but he also saw as he was right, the writing on the wall. You're starting out with this documented coaching. I'm also now applying to jobs. I want to work in this membrane department. Then I'm filing a complaint and doing all these things and here you are saying, okay, now here's this coaching. That's why if it wasn't a big deal, then why take it out? Obviously, their opinion is that it's not a discipline, of course, because it's their policy. We always had to go by the policy of the defendant as to whether something was or was not a question of fact. No employee would ever be able to survive summary judgment. He is stating that in his opinion and would a jury believe that is the question. Would they believe that that coaching, quote unquote, was an issue? If it wasn't an issue, again, why would you remove it six months later? To your Honor's point, Judge Kelly, it wasn't anonymous because everybody seems to know that it was Mr. Farmer filed a complaint. They knew it was him. They knew he was coming forward. He wasn't shy about it. The whole point is it's on the defendant. They talk about there's not evidence and all that for this pretext, but they never explain why did they go from October, you have these write-ups, you wait until February. Never explain that. Did Mr. Farmer identify? They're called anonymous, so it seems like a silly question to ask you, but did he at some point identify himself to link himself up to that information he was reporting? I believe so because they did an investigation at that time about it and they all acknowledge that. If I'm not mistaken, that's in the district court's opinion. On October 9th, 2020, Mr. Farmer lodged a lengthy complaint regarding Mr. Roberts with the ethics hotline. Defendant knew it. The district court knew it. They said that they did this investigation. CALUSA determined the investigation did not support a judgment that Roberts harassed Mr. Farmer and that, surprise, Mr. Farmer had been off task and had probably submitted a complaint in anticipation of facing disciplinary action. Again, why would HR be thinking that he was having disciplinary action for something that we don't know? He had not even been told about in February. Again, as soon as you walk in the door, you can't walk in the door. Your badge doesn't work. You get in there and now you're changing the reason for ... The point is they did all this to try to terminate him and the district court did not take that determination and circumstances of that into account. Thank you. Thank you, counsel. Thank you to both.